596 F.2d 254
 John A. COCHRANE, Appellant,
v.
IOWA BEEF PROCESSORS, INC., Edward W. Rothe and Lee Freeman,
Sr., Appellees.
Lex HAWKINS, Appellant,
v.
IOWA BEEF PROCESSORS, INC., Edward W. Rothe and Lee Freeman,
Sr., Appellees.
 Nos. 77-1988, 78-1008.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 18, 1978.
Decided Jan. 5, 1979.
Rehearing and Rehearing En Banc Denied March 5, 1979.
Certiorari Denied June 4, 1979.
See 99 S.Ct. 2848.
 
 1
 Glenn L. Norris, of Hawkins & Norris, Des Moines, Iowa, for appellants, Cochrane and Hawkins; John J. Greer, Greer, Nelson, Bertell, Montgomery & Barry, Spencer, Iowa, Lex Hawkins, Glenn L. Norris, Donald J. Polden, of Hawkins & Norris, Des Moines, Iowa, and John A. Cochrane, of Cochrane & Bresnahan, St. Paul, Minn., on briefs.
 
 
 2
 James T. Malysiak, of Freeman, Rothe, Freeman & Salzman, Chicago, Ill., for appellees; Malysiak and Edward W. Rothe, Chicago, Ill., and D. Douglas Titus, Titus, Holman & Myers, Sioux City, Iowa, on brief.
 
 
 3
 Before GIBSON, Chief Judge, HENLEY, Circuit Judge, and BECKER, Senior District Judge.*
 
 
 4
 WILLIAM H. BECKER, Senior District Judge.
 
 
 5
 These consolidated appeals are from a final judgment of the United States District Court for the Southern District of Iowa[1] granting a defense motion to dismiss for improper venue[2] this diversity case which sounds in common law tort for alleged abuse of process cognizable under Iowa law, and generally under § 682 of the Restatement of Torts.
 
 
 6
 The plaintiffs (appellants) in the case are Lex Hawkins and John A. Cochrane, both of whom are practicing attorneys. Mr. Hawkins is a citizen of Iowa, residing in and practicing in Des Moines, in the Southern District of Iowa. Mr. Cochrane is a citizen of Minnesota, residing in and practicing in the City of St. Paul, and elsewhere, including the Southern District of Iowa.
 
 
 7
 The defendants in the case are two individuals and one corporation. The individual defendants, Edward W. Rothe and Lee Freeman, Sr., are citizens of Illinois. Like the plaintiffs, they are lawyers and practice in Chicago and elsewhere, including the Southern District of Iowa. One of their clients is the corporate defendant, Iowa Beef Processors, Inc. (Iowa Beef), which is a Delaware corporation having its principal place of business in Nebraska.
 
 
 8
 The suit arises from the fact that in early June 1977, Iowa Beef filed two suits in federal courts, one[3] in the Northern District of Iowa and one in the Southern District of New York, against a number of defendants, including Mr. Cochrane and Mr. Hawkins. Both complaints filed by Iowa Beef charged that in early 1977 the defendants, including Hawkins and Cochrane, conspired to obtain from the defendant Hughes A. Bagley, a former officer of Iowa Beef, and from the defendant Hans Aarsen, a former employee of Iowa Beef, confidential information about Iowa Beef's operation and confidential documents; that disclosure of these documents would be damaging to Iowa Beef and would be helpful to Messrs. Cochrane and Hawkins in an antitrust action they were prosecuting in the Southern District of Iowa on behalf of an organization known as Meat Price Investigators Association (MPIA) in which Iowa Beef and other corporations were defendants; that the disclosures by Bagley violated not only his fiduciary duties to Iowa Beef but also the terms of a contract that had been entered into between him and Iowa Beef in connection with Bagley's separation from his employment by Iowa Beef; and that the disclosures by Aarsen violated his fiduciary duties to his former employer. In these actions Iowa Beef sought damages, and declaratory and injunctive relief.
 
 
 9
 At or about the same time that it filed its suit in the Northern District of Iowa, Iowa Beef filed a similar suit against the same defendants in the United States District Court for the Southern District of New York. That suit was later dismissed by Iowa Beef after jurisdictional and venue questions were raised.
 
 
 10
 The plaintiff Hawkins contends that summons and discovery motions to produce documents in both of these actions were unlawfully served on him in the Southern District of Iowa causing injury to him in the Southern District of Iowa, where most of the documents were located in the office of MPIA.
 
 
 11
 The plaintiff Cochrane contends that summons and discovery motions to produce documents in both of these actions were unlawfully served on him in Minnesota causing injury to him in both Minnesota and in the Southern District of Iowa because most of the documents he was requested to produce were held in the Southern District of Iowa in connection with the related antitrust action he and Hawkins were prosecuting in the Southern District of Iowa.
 
 
 12
 While both of those suits were pending, Iowa Beef served on the plaintiffs motions to produce documents that were in the possession of the plaintiffs. While the motions requested that the documents be produced both at the office of Iowa Beef's counsel in Sioux City, Iowa and at the office of Iowa Beef's counsel in New York City, plaintiffs contend the principal injuries to both occurred in the Southern District of Iowa where most of the documents were located, and where Hawkins was served with the allegedly unlawful process.
 
 
 13
 The theory of the plaintiffs in this case is that while the filing of the suits in the Northern District of Iowa and the Southern District of New York by Iowa Beef were improperly motivated, the service of process therein, including summons and motions to produce, constituted abuse of process and tortious interference with prospective advantage. Plaintiffs contend the abuse of process injured both in the Southern District of Iowa, and injured Cochrane to a lesser degree in Minnesota. Plaintiffs claimed actual and punitive damages amounting to $24,000,000.00 and sought injunctive and declaratory relief as well. They also asked for interest, costs, and a reasonable attorney's fee.
 
 
 14
 From what has been said, it is clear that the district court had diversity jurisdiction of the case. The problem is simply one of venue. Since jurisdiction is based solely on diversity of citizenship, the resolution of the question of venue is governed by 28 U.S.C. § 1391(a). That section provides, subject to exceptions not here relevant, that where a suit is filed in federal court on the basis of diversity of citizenship alone it must be filed either in the district in which all plaintiffs or all defendants reside, or in the district in which "the claim arose."
 
 
 15
 In view of the citizenship of the parties which has been described, it is evident that venue in the Southern District of Iowa was proper only if plaintiffs' claim "arose" in that district within the meaning of § 1391(a).
 
 
 16
 Apart from the venue question with which we are concerned, this case would not appear to be a particularly complicated one. However, it is an offshoot of extensive antitrust litigation involving the beef industry in this country. A number of suits have been filed under § 4 of the Clayton Act, 15 U.S.C. § 15, charging violations of §§ 1 and 2 of the Sherman Antitrust Act of 1890, 15 U.S.C. §§ 1 and 2. One of those suits was filed by Messrs. Hawkins and Cochrane on behalf of MPIA, which has been mentioned, against several defendants, including Iowa Beef, represented by Messrs. Rothe and Freeman, and another defendant identified as Spencer Foods, Inc.[4] The filing of that suit and events leading up to it have unfortunately created much animosity which has extended to at least some of the lawyers involved in the litigation.[5]
 
 
 17
 One may suspect that the suits filed by Iowa Beef in the Northern District of Iowa on June 7, 1977, and in the Southern District of New York at about the same time were in retaliation for the filing by Hawkins and Cochrane of the MPIA suit, and designed to provide two new opportunities to make discovery from the clients of appellants; and that the filing of these actions on July 22, 1977 by Hawkins and Cochrane against Iowa Beef and its attorneys was in retaliation for the filing of the actions in the Northern District of Iowa and in the Southern District of New York.
 
 
 18
 The appellants and other defendants in the action in the Northern District of Iowa case filed a number of defensive motions that were not acted upon until February 1978. In the meantime, appellants Cochrane and Hawkins were not compelled to produce any of the material that Iowa Beef had sought to require them to produce in Chicago and New York.
 
 
 19
 We now return to the point at issue, which is whether the district court erred in holding that the claims of appellants did not arise in the Southern District of Iowa, and so did not satisfy the applicable venue requirement of § 1391(a).
 
 
 20
 The district court dealt with the problem in the following language:
 
 
 21
 With convenience to the parties foremost in mind, federal courts have recently applied a "minimum contacts" approach when determining where a "claim arose". Travis v. Anthes Imperial Ltd., 473 F.2d 515 (8th Cir. 1973); 1 Moore's Federal Practice, § 0.142(.5-2). These courts look to the operative facts of a case to ascertain the most significant contacts. Arnold v. Smith Motor Co., Brookfield, Mo., 389 F.Supp. 1020 (N.D.Iowa 1974). Though considered less significant in other types of actions, the place of injury remains as the principal operative fact in simple tort cases. Redmond v. Atlantic Coast Football League, 359 F.Supp. 666 (S.D.Ind.1973); Maney v. Ratcliff, 399 F.Supp. 760 (E.D.Wis.1975). This is especially true in this action, in which the Multidistrict Panel has apparently concluded that no other factor makes one district more convenient to the parties than another.
 
 
 22
 In the present action, the Court finds the place of injury to be in the Northern District of Iowa. It is there, by filing an action against Hawkins and Cochrane, that defendants are alleged to be doing that which should not be done. While the injury may have effects in this district, the overt act giving rise to the injury was the filing of an action in the federal court for the Northern District of Iowa.
 
 
 23
 To prove "abuse of process", plaintiffs must show that defendants seek to pervert the use of judicial process in the Northern District, and do so for an ulterior motive. Sarvold v. Dodson, 237 N.W.2d 447 (Iowa 1976). The Northern District Court is in a far better position to make such a determination. Though perhaps propelled by facts uncovered in an action elsewhere, defendants' action in the Northern District, based upon inducement to breach contract, is entirely different from the action allegedly interfered with in this Court, which focuses on antitrust violations. This Court should not attempt to tell the Northern District Court that a case pending on its docket was abusing its processes and was but a facade, much less as plaintiffs request enjoin the Northern District Court from processing that case. Also, if the Northern District proceeds on both actions, the possibility that rulings of this Court and the United States District Court for the Northern District would come into direct conflict is eliminated.
 
 
 24
 This Court, while noting its serious reservations, need not consider defendants' argument that plaintiffs' present case must be dismissed because it is a compulsory counterclaim to defendants' case in the Northern District. Having determined that the venue is improperly laid, the Court dismisses the action on this ground alone. 28 U.S.C. § 1406(a).
 
 
 25
 It Is Hereby Ordered that the above-entitled action be dismissed for lack of proper venue.
 
 
 26
 Appellants seek reversal of this judgment of the district court dismissing the action because of lack of venue.
 
 Issues Presented On Appeal
 
 27
 In support of its assignment of error on appeal, appellants contend that:
 
 
 28
 A. In simple tort cases for (1) abuse of process and (2) tortious interference with prospective advantage, cognizable under Iowa law, venue is proper in the place of harm or injury, which was in the Southern District of Iowa. For this reason federal case law supports diversity action venue where the process is received.
 
 
 29
 B. Application of the "weight of contacts" approach requires a finding that venue was proper in the Southern District of Iowa.
 
 
 30
 C. Where there are no compelling justifications for venue in another district the trial court erred in not allowing plaintiffs their choice of forum, the Southern District of Iowa.
 
 
 31
 Anticipating the need to secure favorable resolution of the compulsory counterclaim issue, appellants further contend:
 
 
 32
 D. The plaintiffs' action was not a compulsory counterclaim in either the action in the Northern District of Iowa or in the action in the Southern District of New York.
 
 
 33
 Appellees oppose each of appellants' contentions.
 
 
 34
 For the reasons stated hereinafter, we conclude that within the meaning of § 1391(a) (1) the claim of appellant Hawkins arose in the Southern District of Iowa, and reverse that part of the judgment of the district court dismissing the claim for relief of the appellant Hawkins; (2) the claim of appellant Cochrane arose in the District of Minnesota, and affirm that part of the judgment dismissing the claim for relief of appellant Cochrane.
 
 
 35
 * Nature of Appellants' Claims for Relief
 
 
 36
 In this diversity action appellants base their claims for relief upon the law of Iowa, and to recover each must establish his claim under the law of Iowa.
 
 
 37
 In support of their claims for relief, appellants rely upon general tort law, citing, among other authorities: Prosser, Law of Torts, § 121 (4th edition 1971); 3 Restatement of Torts, § 682 (1938) on Abuse of Process; Note, Abuse of Process, 13 Cleveland-Marshall L.Rev. 163 (1964). In the current 3 Restatement of Torts 2d, § 682 is substantially the same as it appeared in the original 1938 edition.
 
 
 38
 Appellants cite an Iowa decision supporting their contention that a claim for relief for abuse of process exists under Iowa law, citing Sarvold v. Dodson, (Iowa 1976) 237 N.W.2d 447, applying § 682 of the Restatement of Torts (1938). Further, appellants cite an Iowa decision supporting their contention that a claim for relief for tortious interference with prospective advantage exists under Iowa law. Stoller Fisheries, Inc. v. American Title Insurance Co., (Iowa 1977) 258 N.W.2d 336. The Stoller case follows § 766B of Tentative Draft No. 23 (1977) of the Restatement of Torts.[6]
 
 
 39
 Significantly, appellants rely on the Sarvold decision, Supra, which quotes with approval the leading federal district court opinion in Hyde Construction Co., Inc. v. Koehring Co., (S.D.Miss.1974) 387 F.Supp. 702, l.c. 712, Affirmed in the material part, (C.A. 5 1977) 546 F.2d 1193 clarified in 551 F.2d 73 (1977). This latter case, at the district court level, held that process issued by courts in Oklahoma and Wisconsin but served in Mississippi supported a claim for relief under Mississippi law cognizable in Mississippi courts, and dealt with the "significant contacts" rule and the "center of gravity" rule.
 
 
 40
 The better rule is that the ultimate determination in diversity cases of the district in which the claim arose requires application of federal procedural law construing § 1391, Title 28 U.S.C. 15 Wright, Miller & Cooper, Federal Practice and Procedure § 3803, page 10 and cases cited in note 10. But state substantive law applies in defining the essential elements and nature of the claim for relief asserted under state law. Appellants have demonstrated the existence under Iowa law of actions for abuse of process. Whether appellants' second claim for relief based on alleged tortious interference with prospective advantage exists under Iowa law is less clear because the Stoller case dealt with intentional interference with prospective Contractual relation. A decision on that question need not be made on this appeal, and can be left to the judgment of the district court on remand. The same acts of appellees alleged in paragraph 15 of the complaint (Appendix 6, 7), are relied on by appellants in support of their second claim for relief. Therefore, the conclusions of this opinion concerning the district in which each claim for relief of appellants arose are applicable also to the claims for tortious interference with prospective advantage.
 
 
 41
 A discussion of the federal procedural law construing § 1391(a) applicable in this appeal follows.
 
 II
 The Applicable Federal Procedural Law
 
 42
 The federal courts have developed varying standards for determining where the claim arose. The principal ones are: (1) the "weight of contacts" rule; (2) the "place of injury" rule; and (3) the American Law Institute rule, derived from the ALI Study of the Division of Jurisdiction Between the State and Federal Courts, §§ 1303, 1314 (1969). These, and other standards without general support, are described in Wood, Federal Venue: Locating the Place Where the Claim Arose, 54 Texas L.Rev. 392 (1976).
 
 
 43
 This court has noted the American Law Institute rule, in considering the analysis of five factors by Judge Blackmun (Mr. Justice Blackmun) in Aftanase v. Economy Baler Co., (C.A. 8 1965) 343 F.2d 187, and concluded that:
 
 
 44
 Since venue is a procedural rule of convenience, the convenience of the aggrieved party should be first accommodated. Gardner Engineering Corporation v. Page Engineering Company, (C.A. 8 1973) 484 F.2d 27, l.c. 33.
 
 
 45
 The American Law Institute rule allows venue in any district in which "a substantial part of the events or omissions giving rise to the claim occurred." 15 Wright, Miller & Cooper, Federal Practice and Procedure, § 3806, page 29, citing with approval Gardner Engineering Corporation v. Page Engineering Company, supra, (C.A. 8 1973) 484 F.2d 27.
 
 
 46
 The principles of the Gardner Engineering Corporation case, Supra, should be applied in this appeal separately to the claim for relief of appellant Hawkins, and to the claim for relief of appellant Cochrane.
 
 III
 Where the Claim of Hawkins Arose
 
 47
 On June 7, 1977, the defendant Iowa Beef Processors, acting through its counsel defendants Rothe and Freeman, filed in the Northern District of Iowa and the Southern District of New York, identical diversity civil actions against Amalgamated Meat Cutters & Butcher Workmen of North America, AFL-CIO (Union), Irving Stern, Albert J. Krieger, Lex Hawkins, John A. Cochrane, Hughes A. Bagley and Hans Aarsen. The civil actions were based on alleged conduct by the defendants in causing and inducing one Bagley, a former employee of Iowa Beef to violate a contract by giving confidential information to the defendants in those actions. As noted above, the elements of the claim of Hawkins for relief for abuse of process were based on the service upon him in the Southern District of Iowa of summons and motions to produce in Chicago and New York documents located in the Southern District of Iowa (Appellants' Brief 5-11). The alleged abusive process was issued contemporaneously by the district courts of the Northern District of Iowa and the Southern District of New York. Appellants claim that, under Iowa law, the claims arose when the abusive process was served and each sustained injury, citing Stoller Fisheries, Inc. v. American Title Insurance Co., supra (Iowa 1977), 258 N.W.2d 336 and Wolfswinkel v. Gesink, (Iowa 1970) 180 N.W.2d 452 (Appellants' Brief 18, 19) for the rule of substantive law that the claim arose only when injury was caused.
 
 
 48
 In these circumstances it is clear that under any of the federal procedural standards mentioned above the claim of Hawkins arose in the Southern District of Iowa.
 
 
 49
 The controlling opinion of this court in the Gardner Engineering Corporation case, Supra, requires a reversal of the dismissal of the claim for relief of Hawkins, because all three primary factors described by Mr. Justice Blackmun on page 31 of 484 F.2d are related only to the Southern District of Iowa.[7] All contacts giving rise to the claim for relief occurred in the Southern District of Iowa. The remaining two secondary factors, interest of the forum state (district here) and convenience point to venue in the Southern District of Iowa. For if the claim related to the process issued in the Northern District of Iowa arose in the Northern District of Iowa, then a separate second claim arose in the Southern District of New York. This assumption would require the appellants to travel to New York to seek satisfaction of their claims further proliferating this growing mass of litigation. Such a result would violate the rule of the Gardner Engineering case, Supra, that the convenience of the aggrieved party should be first accommodated.
 
 
 50
 All alleged acts claimed by Hawkins to constitute tortious interference with prospective advantage occurred in the Southern District of Iowa.
 
 
 51
 Under the "weight of contacts" rule and the American Law Institute rule, it follows for all of the same reasons that the claim of appellant Hawkins arose in the Southern District of Iowa. So that portion of the judgment dismissing the complaint of appellant Hawkins should be reversed and remanded.
 
 Where The Claim of Cochrane Arose
 
 52
 The claim of appellant Cochrane is based primarily on service of abusive process, and secondarily on tortious interference with prospective advantage. All wrongful acts alleged by appellants are included in paragraph 15 of a one count complaint.
 
 
 53
 On the abuse of process claim of Cochrane it is clear that all process issued and served in the actions filed by defendants in the Northern District of Iowa and the Southern District of New York was served on appellant Cochrane in the District of Minnesota (Appellants' Brief 9).
 
 
 54
 It is claimed that the documents, the production of which was sought by the appellees, were in the Southern District of Iowa, and that the appellees sought to disqualify the appellants in the related basic antitrust action pending there.
 
 
 55
 For the same reasons given in the portion of this opinion concerning the district in which the claim of Hawkins arose, it is concluded that the claim of Cochrane, if cognizable under Minnesota law, arose in the District of Minnesota. All the five factors described by Mr. Justice Blackmun and noted in the Gardner Engineering Corporation case, Supra, point to the District of Minnesota. Cochrane's convenience is accommodated by permitting him to litigate in the district in which he lives and practices. The principal acts and injury of which he complains occurred there. The location of the documents, and the complaints about the appellants in MPIA v. Iowa Beef are secondary.
 
 
 56
 Under the "weight of contacts" rule the most significant contacts and most of the contacts occurred in the District of Minnesota.
 
 
 57
 For these reasons that portion of the judgment dismissing the complaint of Cochrane is affirmed without prejudice to his bringing an action in the District of Minnesota.
 
 IV
 
 58
 The Claims of Appellants Are Not Compulsory Counterclaims
 
 
 59
 The appellees contend that the claims for relief of appellants are compulsory counterclaims which appellants were required to assert in the Northern District of Iowa under Rule 13(a) F.R.Civ.P. (Appellees' Brief IIA). We disagree for the reasons set out below.
 
 
 60
 Rule 13(a) in the material part provides as follows:
 
 
 61
 (a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action . . .
 
 
 62
 This provision of Rule 13(a) is not applicable because (1) the claims of the appellants did not arise out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (2) at the time the action below was lawfully commenced the claims of appellants were the subject of the action under review in the District Court of the Southern District of Iowa.
 
 
 63
 As an introduction to the discussion below some material dates and uncontroverted legal aspects of the litigation should be noted.
 
 
 64
 The actions of appellees in the Northern District of Iowa and in the Southern District of New York were each filed as a diversity action on or about June 7, 1977. The defendant Union was named as a defendant in each action. A union for diversity purposes is a citizen of each state in which it has members.[8] Because the Union had members who were citizens of Nebraska, of which Iowa Beef was a citizen, neither of the actions in the Northern District of Iowa and in the Southern District of New York was lawfully commenced on June 7, 1977. Appellees in a brief filed in the district court on September 6, 1977, admitted the lack of diversity in those two actions (Appendix 65).
 
 
 65
 On July 22, 1977, appellants filed the action under review in the Southern District of Iowa as a diversity action. It was not until August 1, 1977, that appellees filed in the Northern District of Iowa a complaint of which the District Court had jurisdiction and in which the Union was dropped as a party. This was the date that the action in the Northern District of Iowa was lawfully commenced.
 
 
 66
 The transaction or occurrence that was the subject of the two actions in the Northern District of Iowa and in the Southern District of New York is described in appellees' brief as follows:
 
 
 67
 The complaint alleged Inter alia that Bagley, a former high ranking IBP officer, had breached both a settlement agreement with IBP which had been negotiated after Bagley's employment with IBP had been terminated and also his fiduciary duties to IBP by disclosing confidential IBP documents and information to Hawkins, Cochrane, Stern, Krieger and the Union. Aarsen, also a former IBP employee, was also charged with violating his fiduciary duties to IBP by wrongfully disclosing confidential IBP documents. The other defendants, including Hawkins and Cochrane, were charged with inducing Bagley's breaches of contract and violations of fiduciary duties and with conspiring to do those
 
 
 68
 wrongful acts. The Action of Appellants in the Southern
 
 District of Iowa Did Not Arise Out of the
 Transaction That Is the Subject Matter
 
 69
 of Appellees' Claim in the
 
 
 70
 Northern District of Iowa.
 
 
 71
 The gist of the action of appellants filed in the Southern District of Iowa was abuse of process and tortious interference with prospective advantage by a series of acts alleged in paragraph 15 of appellants' complaint. The central theme of appellants' complaint is abuse of legal process. In no substantial sense can appellants' claims for relief for abuse of process be found to have arisen out of the alleged breach of contract by Bagley and out of the alleged breach of fiduciary duties by Bagley and Aarsen.
 
 
 72
 This conclusion is supported by the scholarly opinion of Judge Julian in a similar case, Bose Corporation v. Consumers Union of United States, Inc., (D.Mass.1974) 384 F.Supp. 600. After a review of the applicable case law and the various tests described in 6 Wright & Miller, Federal Practice and Procedure § 1410, Judge Julian concluded:
 
 
 73
 The counterclaims can be read to allege malicious abuse of process. The analysis is similar to the analysis concerning defamation; The counterclaims are permissive and are barred unless operation of the statute of limitations was suspended. The counterclaims also can be read to assert a claim for malicious prosecution of a civil action. Such a claim is premature; the defendant must, and cannot, allege a favorable termination of this suit if it is to proceed on a theory of malicious prosecution. (Emphasis added and citation omitted.) 384 F.Supp. l.c. 603.
 
 
 74
 The varying tests for determining whether the claim in question arose out of the same transaction or occurrence, within the meaning of Rule 13(a) are set forth in 6 Wright & Miller, Federal Practice and Procedure § 1410 at page 42 as follows:
 
 
 75
 1) Are the issues of fact and law raised by the claim and counterclaim largely the same?
 
 
 76
 2) Would res judicata bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule?
 
 
 77
 3) Will substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim?
 
 
 78
 4) Is there any logical relation between the claim and the counterclaim? (Footnotes omitted.)
 
 
 79
 Under these tests, as concluded by Judge Julian in the Bose Corporation case, Supra, the claims for relief of appellants for abuse of process did not arise out of the transaction or occurrence described in appellees' complaints in the Northern District of Iowa.[9]
 
 
 80
 The reasoning of Judge Julian and the authorities cited are fully applicable to this case, in which the factual contrast between the claims of appellants and the transaction or occurrence of appellees' claim for relief is much clearer.
 
 
 81
 Appellees contend that representations made by appellants to the Judicial Panel on Multidistrict Litigation, in a motion to transfer the appellees' actions in the Southern District of New York and in the Northern District of Iowa to Judge Hanson in the Southern District of Iowa, establish that the three actions arise out of the same transaction and occurrence (Appendix 19-21). While paragraph 2 of the motion contains a legal conclusion lending some support to the construction of appellees, paragraphs 4 and 5 clearly describe the differences in the claims noted above. Further, the full pleadings are
 
 
 82
 before us for a determination from the primary evidence. At
 
 
 83
 the Time the Action of Appellees in the Northern District of
 
 
 84
 Iowa Was Lawfully Commenced, Appellants' Action Was Pending
 
 
 85
 in the Southern District of Iowa.
 
 
 86
 It was not until August 1, 1977, when the appellees filed an amended complaint in the Northern District of Iowa alleging diversity of citizenship, that the action of appellees was lawfully commenced. At that time the action of appellants was pending in the Southern District of Iowa on the basis of uncontroverted diversity of citizenship.
 
 
 87
 An action is not lawfully commenced within the meaning of Rule 13(a) when a complaint disclosing absence of jurisdiction on its face is filed. Appellees seek to avoid this conclusion by relying on the following provision of Rule 15(c):
 
 
 88
 Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.
 
 
 89
 The relation back rule is not applicable if the new claim did not arise out of the same transaction or occurrence. Hale v. Ralston Purina Company, (C.A. 8 1970) 432 F.2d 156. For the same reason it cannot affect the claim of appellants in a separate suit.
 
 
 90
 The purposes for which this provision of Rule 15(c) F.R.Civ.P., were intended do not include a procedural fiction which changes the facts in civil actions competing for priority in filing under Rule 13(a) F.R.Civ.P.
 
 
 91
 The purposes of Rule 15(c) are discussed in detail in 3 Moore's Federal Practice P 15.15. These purposes are relief from statutes of limitation primarily. The relation back provision of Rule 15(c) is not applicable as contended by appellees.
 
 
 92
 For the foregoing reasons that portion of the judgment of the district court dismissing the claim for relief of appellant Hawkins is reversed and the cause remanded for further proceedings on the claim for relief of the appellant Hawkins. That portion of the judgment dismissing the claim for relief of appellant Cochrane for lack of venue is affirmed.
 
 DISSENT TO ORDER DENYING REHEARING EN BANC
 
 93
 BRIGHT, Circuit Judge.
 
 
 94
 I dissent from the denial of the petition for rehearing. I recognize that a decision of a panel of this court which does not dispose of the merits of a case is usually not a good candidate for En banc consideration. Nevertheless, it appears to me that the panel's opinion on the venue issue ought to be reconsidered.
 
 
 95
 I. Factual Summary.
 
 
 96
 On June 7, 1977, Iowa Beef Processors, Inc. (IBP), filed identical diversity actions against Hawkins, Cochrane and others in the Northern District of Iowa and in the Southern District of New York, alleging, among other things, a conspiracy by Hawkins and Cochrane to defame IBP. IBP amended its complaints on August 1, 1977, dropping as a defendant a nonessential party whose presence arguably precluded diversity jurisdiction.[1]
 
 
 97
 On July 22, 1977, Hawkins and Cochrane (appellants) filed suit in the Southern District of Iowa against IBP and its counsel, Messrs. Rothe and Freeman (collectively, the appellees), alleging that the appellees had abused judicial process in IBP's Northern District of Iowa and New York lawsuits.[2]
 
 
 98
 On November 17, 1977, Chief Judge William C. Stuart (United States District Court for the Southern District of Iowa) granted the appellees' motion to dismiss the appellants' abuse of process actions in the Southern District of Iowa, holding that Hawkins' and Cochrane's claims arose in the Northern District of Iowa. The present appeal followed.
 
 
 99
 II. The Venue Issue.
 
 
 100
 Appellant Hawkins' abuse of process claim against the appellees is identical in substance to the claim of appellant Cochrane, and the disposition of each of those claims will require identical factual inquiries concerning the appellees' motivation in filing IBP's action, alleged to be abusive of process, in the Northern District of Iowa.[3] Moreover, it seems that the single forum which may most conveniently undertake such factual inquiries is the district in which the appellees filed their lawsuit, the Northern District of Iowa. Yet, according to the panel opinion, the substantially identical claims of Hawkins and Cochrane must be tried in two different forums: respectively, the Southern District of Iowa and the District of Minnesota.
 
 
 101
 That result is obviously impractical and potentially wasteful of judicial and legal time and resources, and I suggest that the panel's reasoning is unsound.[4]
 
 
 102
 The panel indicates that, if venue is proper in the districts where IBP filed its allegedly abusive lawsuits, Hawkins and Cochrane would need to bring abuse of process actions in New York as well as in the Northern District of Iowa, "further proliferating this growing mass of litigation." Cochrane v. Iowa Beef Processors, 596 F.2d 254 at 262 (8th Cir. 1979). However, if venue is proper in the Northern District of Iowa, Hawkins and Cochrane could join, as pendent claims in their Northern District of Iowa action, any cause of action arising out of IBP's alleged abuse of the New York court's process. See Fed.R.Civ.P. 18(a). Surely, the convenience of the parties and the courts is best served by litigation of Iowa Beef's conspiracy action and of Hawkins' and Cochrane's peripheral abuse of process actions in a single forum, which can only be accomplished in the Northern District of Iowa. Instead, the panel itself has "proliferat(ed) this growing mass of litigation," by scattering these related actions to three separate forums.
 
 
 103
 I think the district court correctly determined that, for purposes of venue under 28 U.S.C. § 1391(a), the appellees' abuse of process claims "arose" in the Northern District of Iowa and that venue was properly in that district. In so ruling, the district court stated:
 
 
 104
 In the present action, the Court finds the place of injury to be in the Northern District of Iowa. It is there, by filing an action against Hawkins and Cochrane, that defendants are alleged to be doing that which should not be done. While the injury may have effects in this district (the Southern District of Iowa), the overt act giving rise to the injury was the filing of an action in the federal court for the Northern District of Iowa.
 
 
 105
 To prove "abuse of process", plaintiffs must show that defendants seek to pervert the use of judicial process in the Northern District, and do so for an ulterior motive. Sarvold v. Dodson, 237 N.W.2d 447 (Iowa 1976). The Northern District Court is in a far better position to make such a determination. Though perhaps propelled by facts uncovered in an action elsewhere, defendants' action in the Northern District, based upon inducement to breach contract, is entirely different from the action allegedly interfered with in this Court, which focuses on antitrust violations. This Court should not attempt to tell the Northern District Court that a case pending on its docket was abusing its processes and was but a facade, much less as plaintiffs request enjoin the Northern District Court from processing that case. Also, if the Northern District proceeds on both actions, the possibility that rulings of this Court and the United States District Court for the Northern District would come into direct conflict is eliminated.
 
 
 106
 I agree with the district court's reasoning on this issue.
 
 
 107
 The effect of the panel decision is to place this court's imprimatur upon the obvious forum-shopping by attorneys Hawkins and Cochrane. A reconsideration and reversal of the panel opinion by the full court would demonstrate that such lawyers' tactics, which needlessly complicate the disposition of federal litigation, ought to receive short shrift.
 
 
 108
 Accordingly, I would grant the petition for rehearing, vacate the panel opinion, and affirm the district court.[5]
 
 
 
 *
 The Honorable William H. Becker, United States Senior District Judge, Western District of Missouri, sitting by designation
 
 
 [1]
 The Honorable William C. Stuart, Chief Judge
 
 
 [2]
 28 U.S.C. § 1406(a)
 
 
 [3]
 That case is docketed as No. C-77-4040 and is on the docket of Chief Judge McManus. The initial complaint in that case named as defendants, in addition to Cochrane and Hawkins, the Amalgamated Meat Cutters and Butcher Workmen of North America, AFL-CIO, Irving Stern, Albert J. Krieger, Hughes A. Bagley and Hans Aarsen. On August 1, 1977 the complaint was amended to eliminate the Union as a defendant and to substitute for it three representatives of the Union as class defendants to avoid jurisdictional problems, caused by joinder of the Union
 
 
 [4]
 The suits were filed in federal court in California, Iowa, Nevada, Texas and Utah. The Judicial Panel on Multidistrict Litigation, established by 28 U.S.C. § 1407, consolidated all of the cases, including the MPIA suit, for pretrial purposes and concentrated them in the United States District Court for the Northern District of Texas. See In re Beef Industry Antitrust Litigation, (Jud.Pan.Mult.Lit.1976) 419 F.Supp. 720, and (Jud.Pan.Mult.Lit.1977) 432 F.Supp. 211
 
 
 [5]
 There seems to be no question that Mr. Hawkins and Mr. Cochrane had some private conversations with Hughes A. Bagley, who has been mentioned and who at the time of the conversations was employed by Spencer Foods, and that he may have given Hawkins and Cochrane information that was damaging not only to Iowa Beef but also to Spencer Foods. In any event, when Spencer Foods was sued along with Iowa Beef and other defendants, it moved unsuccessfully for a severance of the claim against it from the claims against the other defendants, and for an order disqualifying Hawkins and Cochrane from further representation of MPIA against Spencer Foods on the ground that they had been guilty of unethical conduct. See Meat Price Investigators Association v. Spencer Foods, Inc., (C.A. 8 1978) 572 F.2d 163; Iowa Beef Processors, Inc. v. Bagley, (C.A. 8 1978) 588 F.2d 638. This latter claim is mentioned in the complaint of appellants
 
 
 [6]
 The Stoller case, Supra, construes § 766B of Tentative Draft No. 23 to require as an element of the claim for relief that the interference cause the third party to discontinue the contractual relation of appellants with their client, or discontinue their prosecution of the antitrust action of MPIA v. Iowa Beef. Neither result is alleged. Therefore, the second claim for relief of appellants may be construed under Iowa law to state a claim for abuse of process only
 
 
 [7]
 Judicial efficiency and convenience require, when possible, that this peripheral litigation be tried where the central antitrust case is to be tried. This factor favors the Southern District of Iowa
 
 
 [8]
 United Steelworkers of America, AFL-CIO v. R. H. Bouligny, Inc., 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965)
 
 
 [9]
 Even if it arose out of the same transaction or occurrence, a claim for relief that has not matured need not be asserted as a compulsory counterclaim. 6 Wright & Miller, Federal Practice and Procedure § 1411, pages 54-55. It is not necessary to discuss this exception
 
 
 [1]
 IBP voluntarily dismissed the New York action without prejudice on October 6, 1977
 
 
 [2]
 Specifically, the alleged abuse of process consisted of: (1) filing suit; (2) serving summons; and (3) serving a document request assertedly calling for Hawkins' and Cochrane's work product as counsel in Meat Price Investigators Association (MPIA) v. Iowa Beef Processors, et al., an antitrust suit originally filed in the Southern District of Iowa on August 10, 1976, but transferred to the Northern District of Texas on June 7, 1977
 
 
 [3]
 Under Iowa law, which the panel apparently assumes governs the merits of this action, See panel at 260, tortious abuse of process is defined as follows:
 Abuse of process, * * *, is the intentional use of legal process for an improper purpose incompatible with the lawful function of the process by one with an ulterior motive in doing so, * * *. The improper use which is the essence of the tort is ordinarily an attempt to secure from another some collateral advantage not properly includable in the process itself, and is, in Prosser's words, 'a form of extortion' in which a lawfully used process is perverted to an unlawful use. (Sarvold v. Dodson, 237 N.W.2d 447, 449 (Iowa 1976) (Quoting Hyde Construction Co. v. Koehring Co., 387 F.Supp. 702, 712-13 (S.D.Miss.1974).)
 
 
 [4]
 In ruling that Hawkins' claim arose in the Southern District of Iowa and that Cochrane's claim arose in the District of Minnesota, the panel opinion relies heavily upon Gardner Engineering Corp. v. Page Engineering Co., 484 F.2d 27 (8th Cir. 1973) and the "factors (concerning the connection between a cause of action and a state) described by Mr. Justice Blackmun on page 31 of 484 F.2d * * *." at 261. See id. at 262
 Such reliance is misplaced. Although the Gardner Engineering decision contains some discussion of a venue problem, 484 F.2d at 32-33, that discussion seems of little relevance here. In any event, the "factors" referred to and relied upon in the panel opinion bear upon whether a state has sufficient contacts with the subject of an action for Jurisdiction to exist in that state, not upon whether Venue was proper, the issue in this case.
 
 
 [5]
 In light of the nature of the abuse of process action under Iowa law, See note 1 Supra, I agree with the panel's determination that the appellants' abuse of process claims did not arise from the same transaction as Iowa Beef Processors' action in the Northern District of Iowa, and were therefore not compulsory counterclaims in that action
 I am troubled, however, by the panel's alternative ruling on the compulsory counterclaim issue. The panel determined that the appellants' abuse of process actions were filed prior to the effective date of IBP's complaint in the Northern District of Iowa and therefore could not be compulsory counterclaims in IBP's action, under Fed.R.Civ.P. 13(a). See at 264-265. In so ruling, the panel concluded that, for purposes of Rule 13(a), IBP's amended complaint in the Northern District, altered to perfect diversity jurisdiction, does not relate back to the date of IBP's original complaint. Such a restrictive reading of the relation back rule of Fed.R.Civ.P. 15(c) lacks support in the language of the rule, in case law, or in policy. Although I have found no case considering this question in the context of Rule 13(a), prior decisions of this and other courts have indicated, without exception, that a complaint amended by dropping nonessential parties to perfect diversity jurisdiction relates back to the date of the original pleading. E. g., Finn v. American Fire & Casualty Co., 207 F.2d 113, 116 (5th Cir. 1953); Brown v. Texas and Pacific R.R. Co., 392 F.Supp. 1120, 1124 (W.D.La.1975). See International Ladies' Garment Workers' Union v. Donnelly Garment Co., 121 F.2d 561, 563 (8th Cir. 1941) (dictum); 3A Moore's Federal Practice P 21.03(2) (1978). Cf. Interstate Refineries Co. v. Barry, 7 F.2d 548, 550 (8th Cir. 1925) (in accord with relation back rule, but pre-Federal Rules).