**In re VALUE–ADDED COMMUNICATIONS, INC., Debtor.**

**Charles BREWER, Trustee for the Value–Added Communications, Inc. Litigation Trust, Plaintiff/Appellee,**

**v.**

**NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES, Defendant/Appellant.**

No. CIV.A. 3:97–CV–2494P.

United States District Court,
N.D. Texas,
Dallas Division.

Aug. 20, 1998.

Steven A. Felsenthal, Litigant's Attorney, Dallas, TX, pro se.

Joseph John Wielebinski, Joseph E Marshall, Munsch, Hardt, Kopf, Harr & Dinan, Dallas, TX, for New York State Department of Correctional Services.

Craig Howard Averch, Neligan & Averch, Dallas, TX, for Charles NMN Brewer.

## MEMORANDUM OPINION AND ORDER

SOLIS, District Judge.

Now before the Court are the following:

1. Brief of Appellant New York State Department of Correctional Services, filed December 8, 1997;

2. Motion to Strike Appellee's Designation of Record on Appeal and Brief in Support Thereof, filed December 12, 1997;

3. Appellee's Opposition to Appellant's Motion to Strike Appellee's Designation of Record on Appeal, filed December 19, 1997;

4. Brief of Appellee, filed December 22, 1997;

5. Appellant's Reply to Appellee's Opposition to Motion to Strike Appellee's Designation of Record on Appeal, filed December 30, 1997; and

6. Reply Brief of Appellant, filed January 12, 1998.

This is an appeal by New York State Department of Correctional Services ("NYDOCS" or "Appellant") from the Bankruptcy Court's Order denying NYDOCS motion to dismiss filed September 10, 1997. For the reasons set forth below, the Court is of the opinion that Appellant's motion to strike should be GRANTED, and that the present action should be REMANDED for further proceedings not inconsistent with this opinion.

### BACKGROUND

**1. STATEMENT OF THE FACTS**

Prior to the commencement of this chapter 11 case, the Debtor, Value–Added Communications, Inc. ("VAC" or "Debtor"), provided

inmate telephone service for the Inmate Call Home Program of NYDOCS under Contract X–197735 (the "Contract"). Pursuant to the terms of the Contract, Debtor was required to pay Appellant commissions on the gross revenues generated by the inmates' collect telephone calls through the New York Telephone Company and various independent telephone companies. In addition, the Contract also required that Debtor establish a separate corporate account to be known as the Technology Infrastructure Improvement Fund ("TIIF") into which the Debtor was required to deposit savings obtained by Appellant's long-term discount agreement with New York Telephone Company. The Contract, as amended, required that Appellant calculate savings less VAC's monthly billings, with a 70–day grace period for VAC to determine the billings for a particular month. The amended Contract also required that each month where there was in excess of the amount of $200,000 accrued as savings, the excess amount be sent to Appellant. As of October 10, 1995 (the "Petition Date"), an amount in excess of $685,000 had accrued.

On January 31, 1996, the New York State Department of Public Service ("DPS") filed a proof of claim for priority payment of assessment fees based on 1995 revenues of the Debtor while doing business with the State of New York. The Bankruptcy Court later disallowed DPS' claim. DPS and NYDOCS are separate and distinct departments of the state of New York.

## 2. STATEMENT OF THE CASE

On August 20, 1996, the Bankruptcy Court for the Northern District of Texas, Dallas Division, confirmed the Third Amended Joint Plan of Reorganization for VAC proposed by Debtor and the Unsecured Creditors' Committee (the "Plan"). The Plan became effective on September 4, 1996. On June 2, 1997, the Trustee filed the Complaint for Avoidance and Recovery of Preferential and Post-petition Transfers (the "Complaint" or "VAC's claim") against Appellant based on recovery of property estate.

On July 11, 1997, Appellant filed its Motion to Dismiss the Complaint. On August 4, 1997, the Trustee filed its Opposition to the Motion to Dismiss, and four days later Appellant filed a brief in support of its motion to dismiss. The Bankruptcy Court preliminarily denied the motion to dismiss and, on September 10, 1997, entered its Order and Memorandum Opinion (the "Order"), denying NYDOCS' motion to dismiss based on its finding that NYDOCS had waived its Eleventh Amendment immunity. On September 15, 1997, the Trustee filed its Notice of Hearing, Motion for Summary Judgment, and Brief in Support thereof. On September 19, 1997, Appellant filed its Emergency Motion to Reconsider and, in the alternative, Motion for Leave to Appeal. The Bankruptcy Court denied Appellant's motion for reconsideration. On October 7, 1997, Appellant filed with this Court its motion for leave to appeal the Order. On November 21, 1997, the Court granted Appellant's request for leave to appeal.

## ANALYSIS

### 1. STANDARD OF REVIEW

 When a district court reviews a bankruptcy court's decision, it functions as an appellate court and utilizes the same standard of review generally applied by a federal court of appeals. *In re Webb*, 954 F.2d 1102, 1104 (5th Cir.1992). In reviewing conclusions of law on appeal, a *de novo* standard of review is applied. *In re Coutee*, 984 F.2d 138, 140 (5th Cir.1993); *In re Young*, 995 F.2d 547, 548 (5th Cir.1993); *In re Allison*, 960 F.2d 481, 483 (5th Cir.1992). A bankruptcy court's findings of fact are subject to the clearly erroneous standard of review. *Young*, 995 F.2d at 548; *Allison*, 960 F.2d at 483. These findings are reversed only if, based on the entire evidence, the court is left "with the definite and firm conviction that a mistake has been made." *Id.*

### 2. APPELLANT'S MOTION TO STRIKE

 Initially, Appellant moves to strike Appellee's designation of the record on ap-

peal. In its designation, Appellee seeks to add two pleadings to the record along with attached documents and evidentiary affidavits. Specifically, Appellee includes a Notice of Hearing, Plaintiff's Motion for Summary Judgment and Memorandum of Law in Support Thereof, and a Memorandum of Law in Opposition to Motion to File Late Claim ("Memorandum of Law"). In seeking to strike these items, Appellant asserts that both the motion for summary judgment and the Memorandum of Law were filed after the entry of the Bankruptcy Court's Order denying Appellant's motion to dismiss. Consequently, Appellant argues that neither submission was considered by the Bankruptcy Court, and, therefore, both pleadings should be stricken. An item that was not considered by the trial court in reaching its decision should be stricken from the record on appeal. *Metro North State Bank v. Barrick Group, Inc.* 100 B.R. 152, 154 (Bankr. D.Conn.1989); *Daly–Murphy v. Winston,* 820 F.2d 1470, 1473 (9th Cir.1987). As noted above, Appellee filed the motion for summary judgment before the issuance of the Bankruptcy Court's Order denying NYDOCS motion for reconsideration. Despite the time of its filing, however, there is no indication that the Bankruptcy Court considered the motion for summary judgment when ruling on either Appellant's motion to dismiss or motion for reconsideration. Similarly, there is no indication that the Bankruptcy Court considered or even reviewed the Memorandum of Law filed in the New York state court. An appellate court is to review what happened in the court below; an appeal does not present a party with "a license to build a new record." *Anthony v. United States,* 667 F.2d 870, 875 (10th Cir.1981). Absent any indication that the Bankruptcy Court considered either Appellee's motion for summary judgment or Memorandum of Law, the Court concludes

that Appellee's designation of record on appeal should be stricken.

### 3. WAIVER and COUNTERCLAIM

In its Order denying NYDOCS motion to dismiss, the Bankruptcy Court concluded that the State of New York waived its Eleventh Amendment immunity by virtue of DPS' filing of its proof of claim. Specifically, the court found that "[r]egardless of the constitutionality of § 106, the State of New York has waived its immunity as a matter of constitutional law." (Memorandum Opinion and Order, at 6). Appellant contends that the Bankruptcy Court erred in this conclusion.

Initially, Appellant argues that because DPS and NYDOCS are separate and independent agencies of the state, the filing of a proof of claim by one does not waive Eleventh Amendment immunity for the other. *Id.* at 9. Specifically, Appellant contends that "[t]his type of division between state agencies and departments have led a majority of courts to conclude that filing of a claim by one state department or agency should not generally waive Eleventh Amendment immunity as to other agencies or departments, or even the State as a whole." *Id.* at 10 (citations omitted). This issue need not be addressed, however, because, as discussed below, the Court has determined that NYDOC's claim does not arise out of the same transaction and occurrence as DPS's claim for revenue tax.

■■■ Notwithstanding the ability of one agency to waive immunity for another, any waiver is limited to the adjudication of that particular state agency's claim along with any counterclaims arising out of the same transaction or occurrence. *See In re Pace Enterprises of Columbia, Inc.,* 171 B.R. 444, 445 (Bankr.D.Dist.Col.1994); *In re Four Seasons Care Centers, Inc.,* 119 B.R. 681, 683–4 (Bankr.D.Minn.1990).[1] Accordingly, Appel-

---

1. While the Bankruptcy Court found waiver as a matter of constitutional law separate and apart from the dictates of § 106 of the Bankruptcy Code, it considered the language of § 106(b) as descriptive of the type of action that would constitute waiver. In doing so, the Bankruptcy Court followed the Fourth Circuit's opinion in *In re Creative Goldsmiths,* 119 F.3d 1140, 1147 (4th

Cir.1997), where the court explained that "... § 106(b) may correctly describe those actions that, as a matter of constitutional law, constitute a state's waiver of the Eleventh Amendment...." Absent any argument by the parties to the contrary, the Court will follow the Fourth Circuit's guidance on this issue.

lant asserts that DPS's claim for revenue tax is unrelated to Appellee's claims against NY-DOCS, and, therefore, does not arise from the same transaction or occurrence. To determine if Appellee's avoidance claim arises out of the same transaction and occurrence as DPS's proof of claim, the Court applies the same standard that governs the determination of whether a counterclaim "arises out of the same transaction or occurrence" under FED. R. CIV. P. 13(a) such that the counterclaim is deemed compulsory. *Pace Enterprises of Columbia, Inc.,* 171 B.R. at 445 (citations omitted).

■ A claim is deemed compulsory "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." FED. R. CIV. P. 13(a). The courts have created a number of tests to aid in determining when a counterclaim is sufficiently related to the main claim to be compulsory: (1) whether the issues of fact and law raised by the claim and counterclaim largely are the same; (2) whether res judicata would bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule; (3) whether substantially the same evidence will support or refute plaintiff's claim as well as defendant's counterclaim; (4) whether there any logical relationship between the claim and the counterclaim. *Tank Insulation Int'l, Inc. v. Insultherm, Inc.,* 104 F.3d 83, 85 (5th Cir.1997) *(citing Park Club, Inc. v. Resolution Trust Corp.,* 967 F.2d 1053, 1058 (5th Cir.1992)); *Cochrane v. Iowa Beef Processors, Inc.,* 596 F.2d 254, 264 (8th Cir.) (quoting 6 Wright & Miller, *Federal Practice and Procedure* § 1410, at 42) *cert. denied,* 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290 (1979). "If any of these four questions results in an affirmative answer then the counterclaim is compulsory." *Insultherm, Inc.,*

104 F.3d at 85 *(citing Park Club, Inc.,* 967 F.2d at 1058; *Plant v. Blazer Financial Servs.,* 598 F.2d 1357, 1360 (5th Cir.1979)). In the present action, however, the parties' dispute on this issue is limited to the application of the "logical relationship" test. (See Brief of Appellee, at 29; Reply Brief of Appellant, at 7). Accordingly, the Court will not address whether the present claim is compulsory under the first three tests enumerated above. Following the fourth test, a logical relationship is found when "the same operative facts serves as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant in the defendant." *United States v. Aronson,* 617 F.2d 119, 121 (5th Cir.1980) *(citing Plant,* 598 F.2d at 1361).[2]

In its Order, the Bankruptcy Court explained that "[t]he State of New York through its Department of Public Service, Finance office, filed a proof of claim for priority payment of assessment fees emanating from the contractual relationship between the State of New York and Value–Added Communications, Inc.". (Memorandum Opinion and Order, at 3). Even assuming that the proof of claim filed by DPS seeks recovery of taxes emanating from NYDOCS contractual relationship with VAC, however, the Court does not agree that this is sufficient to establish that VAC's claim for avoidance arises out of the same transaction or occurrence as DPS's tax claim.

■ As noted above, a counterclaim is logically related when it arises from the same aggregate of operative facts which constitutes the original claim. *Plant,* 598 F.2d at 1360 *(citing Revere Copper & Brass, Inc. v. Aetna Cas. & Sur. Co.,* 426 F.2d 709, 714 (5th Cir.1970)). In the present action, however, DPS's claim and VAC's claim do not share the same core of operative facts. That is, the facts and evidence necessary to determine

---

**2.** The logical relationship test is to be applied in such a way as to effectuate the purpose of Rule 13(a), which is to resolve all claims dependent upon a common factual background in one proceeding. *Pace Enterprises of Columbia,* 171 B.R. at 446 *(citing Timberland Co. v. Sanchez,* 129

F.R.D. 382, 384 (D.D.C.1990)) ("purpose of rule is 'to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of commons matters'") *(quoting Columbia Plaza Corp. v. Security Nat'l Bank,* 525 F.2d 620, 625 (D.C.Cir.1975))

DPS's tax claim have little or no relation VAC's avoidance claim against NYDOCS arising from the Contract. The facts which appear to form the basis of DPS's tax claim center around the determination of the amount of revenue derived from VAC's intrastate activities during the specific time period, and an application of the appropriate state tax law provisions. In contrast, the facts pertinent to VAC's avoidance claim include the specific terms of the Contract, NYDOCS and VAC's actions pursuant to the terms of the Contract both pre-and post-petition, a determination of the property of the estate, etc.... Comparing the two, it appears that the only nexus between DPS's and VAC's claims is the existence of the Contract. While the existence of the Contract is a fact relevant to DPS's tax claim, it is only indirectly important to the adjudication of that claim as the possible source of the revenue sought to be taxed. In VAC's claim, however, the factual issues involving the Contract and contractual relationship between VAC and NYDOCS are central and pervasive. Therefore, it appears that VAC's avoidance claim arises from and involves a set of facts distinct and separate from those pertinent to DPS's tax claim. In addition, other courts faced with this issue have reached a similar conclusions. *See WJM, Inc. v. Massachusetts Dept. Of Public Welfare*, 840 F.2d 996, 1003–04 (1st Cir.1988) (debtor's claim against Department of Welfare stemming from contractual dealings did not arise out of the same transaction or occurrence from which the Department of Revenue's back tax claim arose); *see also In re Four Seasons Care Centers, Inc.*, 119 B.R. 681, 684 (Bankr.D.Minn.1990) (finding that unfiled claim by Department of Human Services for amounts due did not arise from same transaction and occurrence as Department of Revenue's filed proof of claim). Consequently, even if DPS's claim seeks to recover taxes on fees emanating solely from the Contract, VAC's avoidance claim does not arise from the same operative facts or core of aggregate facts which gives rise to DPS's tax claim. Therefore, the Court finds that VAC's claim does not arise from the same transaction and occurrence as DPS's tax claim. Accordingly, the Court concludes that DPS's proof of claim did not waive Eleventh Amendment immunity with respect to VAC's avoidance claim against NYDOCS.

Notwithstanding this determination, the Court is of the opinion that the case should be remanded to the Bankruptcy Court to determine if other actions taken by NYDOCS amounted to a waiver of New York's Eleventh Amendment immunity. In its submissions and at oral argument, Appellee asserted that Appellants may have waived immunity as a result of sending a number of demand letters to VAC, including demand letters sent after the bankruptcy petition was filed. In light of this possible alternative basis for finding waiver, the Court hereby REMANDS this action to the Bankruptcy Court to determine if NYDOCS waived Eleventh Amendment immunity by virtue of sending demand letters to VAC.

## CONCLUSION

Having carefully considered the parties' arguments and the pertinent authorities, the Court concludes that Appellant's Motion to Strike Appellee's Designation of the Record should be GRANTED, and that this case should be REMANDED.

**So Ordered.**