**In re NINE MILE LIMITED, d/b/a Serco Administrators and American Warranty Corporation, Petitioners.**

**No. 82–1822.**

United States Court of Appeals, Eighth Circuit.

**Nov. 2, 1982.**

See also, 8th Cir., 673 F.2d 242.

---

Daniel J. Piliero, Washington, D.C., filed petition for writ of mandamus.

J. Richard Johnson, White & Warbasse, Cedar Rapids, Iowa, filed appellee's brief.

Before LAY, Chief Judge, and HEANEY and McMILLIAN, Circuit Judges.

PER CURIAM.

Nine Mile Limited, d/b/a Serco Administrators, and American Warranty Corporation [petitioners], petition this Court to issue a writ of mandamus directing the district court [1] to vacate an order upholding its transfer of petitioners' diversity action against Philip E. Carnes. The petitioners have presented the facts of this contested transfer once before to this Court. On February 2, 1982, the district court granted Carnes' resisted motion for change of venue of the underlying suit [2] to the District of South Carolina under 28 U.S.C. § 1404(a). The court mailed the case file to the District of South Carolina on the same day as its transfer order. On February 18, 1982, the petitioners asked this Court for a writ of mandamus requiring the district court to temporarily stay the transfer order. We granted that petition, and ordered the district court to request the return of the case

---

1. The Honorable Edward J. McManus, Chief Judge for the United States District Court for the Northern District of Iowa.

2. *Nine Mile Limited v. Carnes,* No. C 81–130 (N.D.Iowa) (filed November 6, 1981).

file from the District of South Carolina so that the district court could properly reconsider its transfer order, with review in this Court if necessary. *In Re Nine Mile Limited,* 673 F.2d 242, 244 (8th Cir. 1982). Neither we nor the district court could reconsider the transfer order at that time, since the premature physical transfer of the case file deprived the courts in this circuit of jurisdiction in the case. *Id.* at 243. The district court regained the case file pursuant to our writ and denied petitioners' motion for reconsideration of the transfer order on June 30, 1982. The petitioners bring the present petition for extraordinary relief from the district court's transfer order and its denial of their motion for reconsideration. Based on our review of the claims raised by the petitioners in the underlying diversity action and the unique facts of this case, we deny the request for a writ of mandamus.

The context of the underlying action, which the district court transferred, is key to our denial of mandamus. In September of 1978, Prime Five, Inc., a North Carolina corporation, contracted to market the petitioners' automobile warranty plans to dealers in North and South Carolina in exchange for commissions based on a set percentage of the premiums generated in that area. Philip E. Carnes was an owner and officer of Prime Five at that time. In March of 1979, Carnes and a co-owner, James Moore, proposed to the petitioners an arrangement whereby Carnes would continue to market the warranty plans in both states under the Prime Five contract and Moore would individually market the plans in South Carolina for a smaller percentage, with the difference in commissions to go to Prime Five. By letter dated March 20, 1979, the petitioners, through Serco Administrators, rejected that proposal, rescinded the contract with Prime Five, and offered Carnes and Moore individual commission contracts to continue marketing the war-

ranty plans in the Carolinas. Moore accepted the offer, Carnes did not.

On September 25, 1979, Prime Five filed a diversity suit in the District of South Carolina against petitioners and others [the South Carolina case][3] claiming breach of the September, 1978, contract by petitioners' unilateral termination of the agreement and failure to pay commissions; interference with the employment contract of Michael Withrow, another Prime Five employee; and breach of the fiduciary obligation of good faith and fair dealing with Prime Five. The South Carolina case apparently is still pending. On November 6, 1981, the petitioners filed the underlying action in this case against Carnes individually, *Nine Mile Limited v. Carnes,* No. C 81–130 (N.D. Iowa), in the Northern District of Iowa [the Iowa case]. The Iowa complaint alleged that Carnes seriously compromised his ability to successfully represent the petitioners' warranty plans in breach of the September, 1978, agreement; that he tortiously interfered with petitioners' business opportunities in the Carolinas; and that he was guilty of misrepresentation to petitioners and mismanagement of Prime Five. The district court ordered this Iowa case transferred to the District of South Carolina on Carnes' resisted motion for a change of venue.

The petitioners now seek a writ of mandamus from this Court to force the district court to vacate its transfer order. They base this request on several alleged errors by the district court in ruling on Carnes' transfer motion. They assert that, at the time the Iowa case was filed, the District of South Carolina had neither personal jurisdiction over Carnes nor proper venue sufficient to meet the "might have been brought" requirement for a 28 U.S.C. § 1404(a) change of venue.[4] They further assert that the district court erred in weighing the convenience of the parties and witnesses in favor of transfer, and that the

---

3. *Prime Five, Inc. v. Sakaris,* Civil Action No. 79–1940–6 (D.S.C.) (filed September 25, 1979).

4. 28 U.S.C. § 1404(a) reads: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

transfer is not in the interest of justice since it only shifts the cost of litigating the Iowa case to the petitioners. On the particular facts surrounding this litigation, we do not agree with the petitioners.

█ The Iowa case "might have been brought" in the District of South Carolina for the purposes of 28 U.S.C. § 1404(a). The South Carolina court had, and still has, jurisdiction over Carnes, even if he was not a South Carolina resident at the time of his alleged wrongdoing or at the time the Iowa case was filed.[5] A federal court sitting in diversity determines personal jurisdiction by applying the law of the state in which that court sits, assuming that state law meets constitutional due process requirements. *Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Management, Inc.,* 519 F.2d 634, 637 (8th Cir. 1975); *Hardy v. Pioneer Parachute Co.,* 531 F.2d 193, 195 (4th Cir. 1976). South Carolina's long-arm statute clearly reaches Carnes for the purposes of personal jurisdiction in a lawsuit based on petitioners' underlying claims. That statute provides that South Carolina courts have personal jurisdiction

> over a person who acts directly or by an agent as to a cause of action arising from the person's * * * transacting any business[,] * * * contracting to supply services or things[,] * * * [committing] a tortious act in whole or in part[,] * * * [or entering] into a contract to be performed in whole or in part by either party in this State.

S.C.Code Ann. § 36–2–803(1)(a)–(c), (g) (Law. Co-op 1976).

The district court based its personal jurisdiction finding on the contract aspects of the South Carolina statute. The petitioners vigorously claim error in that Carnes was allegedly not party to any contract with them. We find no error in the district court's conclusion.

█ The petitioners' complaint in the Iowa case explicitly charges Carnes with breach of the September 1, 1978, agreement. The contract was to be performed at least in part in South Carolina. Although we might read the contract as making only Prime Five a marketing party thereto, the petitioners' complaint asserts that Carnes breached the contract individually. Even if Carnes was not a party to the contract, however, the District Court of South Carolina would have personal jurisdiction based on other subsections of the South Carolina long-arm statute. That statute has been construed to reach as far as due process allows. *Cozi Investments v. Schneider,* 272 S.C. 354, 252 S.E.2d 116, 118 (1979); *Hardy v. Pioneer Parachute Co., supra,* 531 F.2d at 195; *Nelepovitz v. Boatwright,* 442 F.Supp. 1336, 1338–1339 (D.S.C.1977). The petitioners claim that Carnes tortiously interfered with their business opportunities in North and South Carolina, specifically alleging eventual loss of several South Carolina accounts to their rival, Voyager Insurance Company, by December of 1979. Carnes' alleged tortious activity resulting in petitioners' damage in South Carolina is enough for personal jurisdiction over him in that state. *Cf. Parker v. Williams & Madjanik, Inc.,* 270 S.C. 570, 243 S.E.2d 451, 453–454 (1978) (out-of-state architect subject to South Carolina jurisdiction when his design for a South Carolina building was allegedly defective). Also, the district court might have found that Carnes had transacted business in South Carolina in connection with the petitioners' cause of action. *See id.,* 243 S.E.2d at 454. On these facts, the District of South Carolina's personal jurisdiction over Carnes is no barrier to fulfilling the "might have been brought" requirement of 28 U.S.C. § 1404(a).

The petitioners also contend that the Iowa case could not be transferred consist-

---

**5.** The petitioners do not contest the District of South Carolina's subject matter jurisdiction over this diversity case, since there is complete diversity of all parties involved. The question of personal jurisdiction over Carnes by the District of South Carolina, for change of venue purposes, must be answered as of the time of the original Iowa complaint, rather than as of the time of Carnes' subsequent consent to be sued in South Carolina. *Hoffman v. Blaski,* 363 U.S. 335, 342–345, 80 S.Ct. 1084, 1088–1090, 4 L.Ed.2d 1254 (1960); *McAdoo v. Union National Bank of Little Rock, Arkansas,* 558 F.2d 1313, 1316 (8th Cir. 1977).

ent with section 1404(a) because the District of South Carolina was not a proper venue for that action. Venue in this case is determined by 28 U.S.C. § 1391(a). In a federal civil action based only on diversity, section 1391(a) provides that venue lies only in a district where "all plaintiffs or all defendants reside, or in which the claim arose." The venue issue in the present case rests on whether South Carolina is a jurisdiction "in which the claim arose." The district court found that a substantial part of the events giving rise to petitioners' claims occurred in South Carolina, based on petitioners' South Carolina sales records and the territory covered by the original Prime Five contract—North and South Carolina. The court held such was enough to declare South Carolina a jurisdiction with proper venue under section 1391(a). *See Cochrane v. Iowa Beef Processors, Inc.*, 596 F.2d 254, 261 (8th Cir.), *cert. denied*, 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290 (1979).

■ The phrase "in which the claim arose" is subject to many interpretations. *See id.*, 596 F.2d at 260–261 (noting the "place of injury," "weight of contacts," and "substantial part of events or omissions" tests). We have earlier recognized that the jurisdiction where performance of a contract is expected is a place in which contractual claims arise. *Gardner Engineering Corp. v. Page Engineering Co.*, 484 F.2d 27, 33 (8th Cir. 1973). Here, the petitioners' complaint alleges that Carnes breached a contract which was to be performed in North and South Carolina, even though the petitioners now assert that Carnes was not party to that contract. The "place of performance" rationale, coupled with the "substantial part" test, is sufficient to sustain the district court's determination that South Carolina was a jurisdiction in which the petitioners' claims arose for purposes of the federal venue statute.[6]

■ The other issues raised by the petitioners, that the district court erred in weighing the convenience of the parties and witnesses and that transfer is not in the interest of justice, are essentially factual determinations. We find no error in the district court's resolution of these issues. The South Carolina case shares enough legal and factual issues with the Iowa case that the consolidation of the two cases under Fed.R.Civ.P. 42(a) is a possibility, weighing in favor of transfer of the Iowa case. The petitioners raise as a second defense in the South Carolina case, *inter alia*, that Prime Five's "principal officer and shareholder [failed] to reflect the personal standards expected of a general agent." This defense, apparently referring to Carnes, raises many of the same questions which will have to be answered in the Iowa case. The affidavits of attorneys for the various parties conflict as to the degree of similarity between the Iowa and South Carolina cases, but on the whole we are persuaded that the trial preparation and actual litigation of the cases together would be more convenient to both parties.[7] Also,

6. We are aware that cases interpreting the "in which the claim arose" language are not altogether harmonious. Therefore, we hesitate to go further than basing our decision in this case on the contractual performance rationale implicit in the district court opinion. We note, however, that in the circumstances of this case—with a substantial part of the harm alleged occurring in South Carolina, the witnesses necessary to proof of that harm present in that area, and the petitioners already involved in a suit arising out of the same transaction in South Carolina—we might reach the same result based on the apparent intent of the drafters of section 1391(a) to make venue proper in more districts for the convenience of the parties and witnesses. *See* S.Rep. No. 1754, 89th Cong., 2d Sess., *reprinted in* 1966 U.S. Cong. & Ad. News 3693, 3694–3695 (citing letters from

the Administrative Office of the United States Courts and the Department of Justice asserting that the "in which the claim arose" language of sections 1391(a) and (b) was intended to provide greater flexibility in choosing a federal forum for the convenience of litigants and witnesses). *But cf. Leroy v. Great Western United Corp.*, 443 U.S. 173, 183–186, 99 S.Ct. 2710, 2716–2718, 61 L.Ed.2d 464 (1979) (same language in section 1391(b) interpreted to restrict a plaintiff's choice of venue to districts convenient in terms of availability of witnesses, accessibility of evidence, and convenience of defendant).

7. A counterclaim raised by Carnes in the Iowa case, claiming harm from defamatory statements allegedly made by petitioners' agent, is

since the petitioners' Iowa claims rest on loss of business in the Carolinas, the witnesses necessary to those claims apparently will be more available in the South Carolina forum.

█ Finally, we agree that the interests of justice are better served when transfer is aimed at resolving in one litigation all legal contentions arising out of the construction, performance, and interference with the same contract. Carnes and the petitioners should be able to reduce costs by litigating the action closer to the situs of the alleged wrongdoing and harm. We do not see how the petitioners will incur additional expense in hiring attorneys after the transfer, since they have South Carolina counsel who should be able to deal with the issues in the Iowa case more easily than an Iowa attorney who was not involved in the discovery already completed in the South Carolina case.

Change of venue, although within the discretion of the district court, should not be freely granted. Courts are in the business of deciding cases, not playing procedural hockey among available districts at the whim of dissatisfied parties. The unique posture of the present case, however, supports a change of venue in the interest of complete and efficient justice. Therefore, we deny the petition for a writ of mandamus.

unrelated to the South Carolina case, but no more so than it is unrelated to the Iowa case. The counterclaim could be considered in South Carolina as well as it could be in Iowa. The presence of such a counterclaim has little if any probative value in reviewing the propriety of this transfer when so many other aspects of the case support the district court's action.