UNITED MORTGAGE CORPORATION, a Minnesota corporation, Plaintiff,

v.

PLAZA MORTGAGE CORPORATION, a Missouri corporation, Defendant.

Civ. No. 4–93–570.

United States District Court, D. Minnesota, Fourth Division.

May 20, 1994.

Mark R. Miller, Thomas E. Harms, James A. Stein, Hessian McKasy & Soderberg, P.A., Minneapolis, MN, for plaintiff.

Todd L. Gurstel, Gurstel Law Office, Minneapolis, MN, David T. Lichtor, Saint Paul, MN, Daniel D. Phillips, Phillips Law Office, Kansas City, MO, for defendant.

## ORDER

DOTY, District Judge.

This matter is before the court on the motion of plaintiff United Mortgage Corporation ("United") for summary judgment and on the motion of defendant Plaza Mortgage Corporation ("Plaza") for change of venue. Based on a review of the file, record, and proceedings herein and for the reasons stated below, the court grants plaintiff's motion for summary judgment and denies defendant's motion for change of venue.

## BACKGROUND

United is a Minnesota corporation with principal offices in Bloomington, Minnesota. United is a mortgage banking company and purchases loans secured by first mortgages on residential real estate. Plaza is a Missouri corporation with principal offices in Kansas City, Missouri. Plaza is in the business of originating and reselling residential real estate loans. This case was originally filed in Minnesota state court, but was removed to federal court on the motion of Plaza. Jurisdiction is based on diversity.

United and Plaza agreed to buy and sell residential real estate loans on a continuing basis by written agreement dated August 27, 1992 ("the Correspondent Agreement"). The Correspondent Agreement set forth terms, conditions, and warranties between the buyer of loans, United, and the seller of loans, Plaza. The Correspondent Agreement incorporated United's *Correspondent Handbook* as a material part of the parties' contractual relationship. The agreement provides:

> Loan Packages prepared and submitted to [United] by Correspondent [Plaza] will conform in all respects to [United's] handbook, which [United] may modify at any time.

Plaza agreed to disclose all matters which impaired the value of the mortgage, the security for the loan. Plaza also agreed to disclose all material facts that could affect value. The relevant contract provisions read:

> In connection with each underwriting submission package, collateral package, and closed loan package, Correspondent will at all times observe strict standards of candor, good faith and full disclosure to [United] regarding all matters which impair the value of the security for any loan or otherwise affect the loan's validity, enforceability or collectibility.
>
> \*   \*   \*   \*   \*   \*
>
> At or before the time of transmitting to [United] each underwriting submission package, collateral package, and closed loan package, Correspondent will disclose to [United] all material facts affecting the risk, as required by paragraph 3(b) of this agreement. Thereafter, whenever Corre-

spondent learns anything indicating that a prior disclosure may have been incomplete, inaccurate or misleading, Correspondent will fully inform [United].

The parties agree that Plaza was responsible for originating real estate loans and that United was responsible for purchasing these real estate loans if certain conditions were met. However, they dispute whether the contract entitled United to force Plaza to repurchase loans. United argues that Plaza was obligated to repurchase the loans if they failed to conform with requirements in the *Correspondent Handbook* or if Plaza breached warranties or representations made to induce United to purchase the loans.

In October and November of 1992, Plaza tendered three loans to United for purchase. The dates of tender for the three loans, the mortgagor, and the amount of the loan are as follows:

| Date | Mortgagor | Amount Paid to Plaza |
|------|-----------|---------------------|
| October 27, 1992 | Richard & Carolyn Burton | $160,000 |
| November 5, 1992 | Michael & Cynthia O'Hara | 95,000 |
| November 6, 1992 | Michael & Rebecca Dolly | 113,200 |
| Total Amount Paid to Plaza | | $368,200 |

Plaza admits that it refused to repurchase the three loans. United claims Plaza breached the terms of the Correspondent Agreement by failing: (1) to disclose the existence of prior liens on the mortgage properties which negatively affected the loan's value and enforceability; (2) to deliver a policy of title insurance showing no outstanding liens in order to ensure full title protection for United; (3) to repurchase the Burton, O'Hara, and Dolly loans after notice was given that each loan failed to meet the requirements of the *Correspondent Handbook*. United also asserts that representations and warranties made by Plaza were breached.

United alleges it has incurred costs of $386,952.20 through December 31, 1993, to clear prior mortgages and tax liens plus interest. United contends that the Correspondent Agreement obligates Plaza to pay for the costs of clearing title on the Burton, O'Hara, and Dolly loans. Plaza denies liability and has brought a motion to change venue and transfer this case to the Western District of Missouri.

## DISCUSSION

The court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard mirrors the standard for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), which requires the trial court to enter judgment as a matter of law if there can be but one reasonable conclusion as to the verdict. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* at 249, 106 S.Ct. at 2511.

On a motion for summary judgment, the court views the evidence in favor of the nonmoving party and gives that party the benefit of all justifiable inferences that can be drawn in its favor. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, cannot rest upon mere denials or allegations in the pleadings. Nor may the nonmoving party simply argue facts supporting its claim will be developed later or at trial. Rather the nonmoving party must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If reasonable minds could differ as to the import of the evidence, judgment as a matter of law should not be granted. *See Anderson*, 477 U.S. at 250–51, 106 S.Ct. at 2511. If a plaintiff fails to support an essential element of a claim, however, summary judgment must issue because a complete failure of proof regarding an essential element renders all other facts imma-

terial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

## 1. Breach of Contract.

■ The questions presented relate to contract interpretation and are for the court to decide. The evidence shows that Plaza breached the Correspondent Agreement. It is undisputed Plaza failed to disclose the existence of prior encumbrances on the Dolly, O'Hara and Burton properties. Plaza, an experienced originator of residential real estate loans, knew that prior recorded mortgages and tax liens would significantly affect the value of loans sold to United. Nonetheless Plaza failed to disclose these prior encumbrances.

The agreement also obligated Plaza to provide a title insurance policy showing no prior liens. The relevant provision from the *Correspondent Handbook* provides:

The title policy must assure full title protection to United Mortgage. The title policy must also list all subordinate liens and state that they are subordinate to our [United's] first mortgage lien.

Outstanding Liens—policy must show no outstanding liens.

The record demonstrates that Plaza failed to provide title insurance policies to United at the time United purchased the Dolly, O'Hara and Burton loans. Each loan had a prior encumbrance on the mortgaged property. If Plaza had acquired title insurance as specified in the agreement, United would have been protected.

The Correspondent Agreement provided clear remedies if Plaza breached its disclosure obligations or failed to provide a title insurance policy. The remedy provision in the contract provides:

At [United's] option, Correspondent will promptly purchase for [United] any loan, previously originated by Correspondent and sold to [United], (i) which fails to conform in any material respect to the requirements of [United's] [Correspondent] Handbook or (ii) with respect to which any representation or warranty of Correspondent was inaccurate or was breached in any material respect, ...

Loan purchases by Correspondent under this subparagraph will be at the price and on the other terms stated in [United's] [Correspondent] Handbook.

Plaza tendered three mortgages to United which had prior encumbrances which impaired the value of the mortgages and promissory notes purchased by United. Plaza's failure to disclose the existence of these prior encumbrances violated the parties' contractual agreement. United was entitled to compel Plaza to repurchase loans which did not conform to the parties' contractual agreement.

United demanded that Plaza repurchase the three loans after discovering Plaza's breaches. United resorted to its contractual remedies, but Plaza again disregarded the terms of the contract and refused to repurchase the three loans. United has submitted evidence validating its allegations of loan purchases, loan defects, demand for Plaza to repurchase the loans, and Plaza's refusal to repurchase. The evidence before the court is unequivocal and no issues of material fact exist regarding Plaza's liability to repurchase the three loans. Accordingly, the court grants United's motion for summary judgment.

## 2. Motion to Transfer.

Plaza brings a motion to change venue pursuant to 28 U.S.C. §§ 1391 and 1404. Plaza alleges that transfer of this case to the Western District of Missouri would promote the convenience of the parties and would be in the interest of justice. Plaza relies upon *Alternative Pioneering Systems, Inc. v. Direct Innovative Product, Inc.,* Civ. No. 4–92–278, slip op. (D.Minn. August 20, 1992), 1992 WL 510190. Plaza ignores the forum selection clause that designated Minnesota as the jurisdiction where legal proceedings would be brought. The contract provides:

This agreement is governed by Minnesota law, and any legal action by either party under this agreement will be brought in Minnesota.

■ In *Alternative Pioneering* the heavy burden for transferring a case was succinctly stated. Transfer under section 1404(a) "should not be freely granted." *Id.* 1992 WL

at 510190 at *4 (citing *In re Nine Mile Ltd.,* 692 F.2d 56, 61 (8th Cir.1982)). The party seeking transfer bears the heavy burden of showing that the balance of factors *strongly* favors the movant. *Id.* (citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)) (emphasis in original). There is a presumption in favor of the plaintiff's choice of forum. *Id.* (citing *Christensen Hatch Farms, Inc. v. Peavey Co.,* 505 F.Supp. 903, 911 (D.Minn.1981)).

Plaza's conclusory statements that transfer to the Western District of Missouri would promote convenience and the interests of justice do not suffice. A motion to transfer should be denied if the inconvenience of defending an action in one district is shifted to the plaintiff by requiring the plaintiff to bring its claims in a different district. Transfer of this case to the Western District of Missouri would merely shift the inconvenience from Plaza to United. Because Plaza expressly consented to the choice of Minnesota as a forum the court has little sympathy for Plaza's claims of inconvenience in defending suit in Minnesota.

Plaza's motion to transfer simply ignores the forum selection clause in the parties' contractual agreement. Although Plaza agreed to litigate all disputes in Minnesota, it now seeks to evade this contract term based on bare claims of convenience and interest of justice. Forum selection clauses are binding upon parties in diversity cases unless enforcement is shown to be unjust or the clause was obtained through fraud or overreaching. *Jones v. Weibrecht,* 901 F.2d 17 (2d Cir. 1990); *Pelleport Investors Inc. v. Budco Quality Theatres Inc.,* 741 F.2d 273, 279 (9th Cir.1984). Plaza has failed to provide any evidence that demonstrates the forum selection clause should not be enforced. The evidence before the court indicates that Plaza consented to a clause which is unequivocal and reasonable. The forum selection clause is enforceable and the court denies Plaza's motion to change venue and transfer.

## CONCLUSION

The court concludes that Plaza breached its contractual obligations by failing to disclose prior encumbrances and by failing to provide title insurance policies. Plaza's conduct impaired the value of loans purchased by United. The court also holds that United was contractually entitled to demand that Plaza repurchase the defective loans. Accordingly, **IT IS HEREBY ORDERED** that United's motion for summary judgment is granted and Plaza's motion for a change of venue is denied. The court will enter judgment upon proper motion of the plaintiff.