**Gerald A. BROCKMAN, Robert W. Campbell, Douglas B. Donovan, Jason B. Hall, Chad A. Heikkila, Derik C. Johnson, Peter N. Ladas, Michael Ladas, Michael P. McDonald, Alan R. McMurchie, Jeffrey J. McMurchie, Bruce D. Nauth, Gregory A. Ries, Shawn R. Sorenson, and Timothy A. Zaruba, Plaintiffs,**

v.

**SUN VALLEY RESORTS, INC., a Wyoming corporation; Sinclair Oil Corp., a Wyoming corporation; Sun Valley Suns, an Idaho corporation; and Frank J. Zamboni Company, Inc., a California corporation, Defendants.**

Civ. File No. 3–96–36.

United States District Court,
D. Minnesota,
Third Division.

May 2, 1996.

Thomas James Conlin, Roman Lifson, Robins Kaplan Miller & Ciresi, Minneapolis, MN, for plaintiffs.

Diana Young Morrissey, Erik A. Lindseth, Faegre & Benson, Minneapolis, MN, Ronn B. Kreps, Larkin Hoffman Daly & Lindgren, Bloomington, MN, Thomas H. Morton, Morton & Morton, Zebulon, GA, for defendants.

## MEMORANDUM AND ORDER

MAGNUSON, Chief Judge.

This matter is before the Court upon the Motion to Transfer Venue, brought by Defendant Sinclair Oil Corp. (collectively with Defendant Sun Valley Resorts, Inc., "Sinclair"). For the following reasons, the Court grants Sinclair's motion.

### BACKGROUND

This action arose from a hockey game between the Minnesota Stallions and the Sun Valley Suns in January 1994. The Plaintiffs are members of the Stallions, a Minnesota hockey team. As alleged in the Plaintiffs' Complaint, the Suns, a Sun Valley, Idaho hockey team, invited the Stallions to Sun Valley, Idaho, to play two games of hockey. The Stallions accepted the challenge, and on January 21, 1994, the two teams met to compete at Sinclair's indoor ice arena.

Before the game and between periods, ice maintenance personnel resurfaced the ice using a machine commonly called a "Zamboni machine", named after its manufacturer, the Frank J. Zamboni Company, Inc. ("Zamboni"). The Plaintiffs became seriously ill during the game and allege that their illness

resulted from elevated levels of nitrogen dioxide emitted from the Zamboni machine. Five team members reportedly were hospitalized, while others were treated and released along with other players and spectators.

The Plaintiffs filed this action in a Minnesota state district court in December 1995. In their Complaint, the Plaintiffs allege that the negligence of Sinclair and Sun Valley in the maintenance of the arena and in the maintenance and use of the Zamboni machine caused their injuries. The Plaintiffs also allege the Suns were negligent in failing to insure the game would be played in a reasonably safe arena. The Plaintiffs charge Zamboni with negligent design and manufacture of the Zamboni machine, as well as strict products liability. Defendant Sinclair, with the consent of the other Defendants, filed a Notice of Removal to this Court on January 11, 1996.

Sinclair now moves the Court to transfer venue from this District to the District of Idaho under 28 U.S.C. § 1404(a). The Plaintiffs oppose the motion.

## DISCUSSION

### A. Standard Applied to § 1404(a) Motion

■ The parties begin this debate with a dispute concerning the proper standard to be applied to this motion to transfer, and particularly to the weight to be afforded the Plaintiffs' choice of forum. The question emerges from the historic treatment of transfer motions under 28 U.S.C. § 1404(a) and motions under the *forum non conveniens* doctrine, so some background discussion is helpful.

Under a motion to dismiss to allow litigation elsewhere pursuant to the doctrine of *forum non conveniens,* a court considers the private and public interest factors provided by the Supreme Court's decision of *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). The *Gilbert* Court provided a general, nonexclusive list of concerns of private interest to the parties:

relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of the premises, if view

would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditions and inexpensive.

330 U.S. at 508, 67 S.Ct. at 843. The Court also highlighted factors of public concern:

Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than remote parts of the country where they can learn of it by report only.

*Id.* Additionally, the Court provided what would appear to be the predecessor to the "interest of justice" clause of § 1404(a): "There may also be questions of the enforceability of a judgment if one is obtained. The Court will weigh relative advantages and obstacles to fair trial." *Id.*

In 1948 Congress enacted 28 U.S.C. § 1404(a) "in accordance with the doctrine of *forum non conveniens.*" 28 U.S.C. § 1404(a) historical and statutory note. Under that provision, if, based on the convenience of the parties and witnesses and in the interest of justice, it is proper to transfer a civil action to another federal district court, a court may so transfer if the transferee district is a district in which the case might have been brought originally. 28 U.S.C. § 1404(a).

Not surprisingly, despite the procedural difference between dismissal for refiling and transfer to another district, courts have continued to refer to motions for transfer under § 1404(a) as motions under *forum non conveniens.* *Parette v. Lockhart,* 927 F.2d 366, 367 n. 2 (8th Cir.1991) (noting that the magistrate judge "could have transferred the petition to a district court in Louisiana on *forum non conveniens* grounds"); *Lourdes High School of Rochester, Inc. v. Sheffield Brick & Tile Co.,* 870 F.2d 443, 444 (8th Cir.1989) (referring to § 1404 motion as a "motion for change of venue on *forum non conveniens* grounds"); *Continental Grain (Australia) Pty. Ltd. v. Pacific Oilseeds, Inc.,* 592 F.2d 409, 422 (8th Cir.1979) ("[T]he establishment

of venue in the District of Minnesota need not prevent the transfer of the action to some other district under the doctrine of *forum non conveniens.*"); *Gardner Engineering Corp. v. Page Engineering Co.*, 484 F.2d 27, 33 (8th Cir.1973).

Indeed, because § 1404(a) is an outgrowth of the doctrine of *forum non conveniens*, it is also no surprise that the *Gilbert forum non conveniens* factors are applied to § 1404(a) motions. *CPC International, Inc. v. Northbrook Excess & Surplus Ins. Co.*, 962 F.2d 77, 80 (1st Cir.1992) (stating that the *Gilbert* factors give substance to the "amorphous statutory standard" of § 1404(a)); *Moore v. Telfon Communications Corp.*, 589 F.2d 959, 968 (9th Cir.1978); *Technitrol, Inc. v. McManus*, 405 F.2d 84, 86 (8th Cir.1968) (noting trial court's application of factors considered in § 1404(a) motion as set out in *Gilbert*), *cert. denied*, 394 U.S. 997, 89 S.Ct. 1591, 22 L.Ed.2d 775 (1969); *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 & n. 4 (10th Cir.1967) (applying *Gilbert* factors to § 1404(a) motion); *Nicol v. Koscinski*, 188 F.2d 537, 537–38 (6th Cir.1951) (same).

It is a mistake, however, to assume that applying the same factors demonstrates a merging of § 1404(a) with *forum non conveniens*. Indeed, the Supreme Court has established that the doctrines, as well as their corresponding standards, are not identical:

> When Congress adopted § 1404(a), it intended to do more than just codify the existing law on *forum non conveniens*. ... Congress, in writing § 1404(a), which was an entirely a new section, was revising as well as codifying.... [W]e believe that Congress ... intended to permit courts to grant transfers upon a lesser showing of inconvenience. This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader.

*Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955). *See also Ellis v. Great Southwestern Corp.*, 646 F.2d 1099, 1103 & n. 4 (5th Cir.1981); *Reyno v. Piper Aircraft Co.*, 630 F.2d 149, 157 & n. 16 (3d Cir.1980), *rev'd on other grounds*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981).

■ Notwithstanding this broadening of discretion, the Eighth Circuit has stated that motions to transfer "should not be freely granted," *In re Nine Mile, Ltd.*, 692 F.2d 56, 61 (8th Cir.1982), and courts still begin the analysis by affording the plaintiffs choice of forum presumptive weight. *See, e.g., In re McDonnell–Douglas Corp.*, 647 F.2d 515, 517 (5th Cir.1981); *Christensen Hatch Farms, Inc. v. Peavey Co.*, 505 F.Supp. 903, 910–11 (D.Minn.1981). After *Norwood*, judges of this Court have recognized "a plaintiff's choice of forum is no longer entitled to the great weight given it under the doctrine of *forum non conveniens*," *Medtronic, Inc. v. American Optical Corp.*, 337 F.Supp. 490, 497 (D.Minn.1971) (Larson, J.); *First National Bank v. White*, 420 F.Supp. 1331, 1337 (D.Minn.1976) ("[T]he Court does not afford near-controlling weight to plaintiff's choice of forum as was done under the old *forum non conveniens* doctrine.") (Larson, J.), but still require a movant to show that the balancing of the other factors "strongly favors" transfer. *United Mortgage Corp. v. Plaza Mortgage Corp.*, 853 F.Supp. 311, 315 (D.Minn. 1994). *See also Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 259 (11th Cir.1996) ("The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." (citation omitted)); *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir.1992) (reaffirming that the balance of factors must strongly favor the movant to overcome the presumption in favor of the plaintiff's forum choice).

■ Fairly summarized, in a motion to transfer under 28 U.S.C. § 1404, precedent requires this Court to defer to the Plaintiffs' choice of Minnesota unless the factors outlined in *Gilbert* strongly weigh in favor of transfer to the District of Idaho; but the weight to be afforded the Plaintiffs' choice is not insurmountable, and certainly less an obstacle than under a *forum non conveniens* analysis. The Court therefore, beginning with the presumption that the case should remain in this District, must answer whether this case could have been brought originally in the District of Idaho, and must weigh (1)

the convenience of the parties, (2) the convenience of the nonparty witnesses, and (3) the interest of justice in light of this background. The Court will best weigh conveniences and the interest of justice by considering and applying the public and private factors framed in *Gilbert.*

### B. Application of Standard

#### I. Whether Case Could Have Been Brought in the District of Idaho

■ The first issue, whether the case could have been brought in the District of Idaho, is easily resolved. On January 5, 1996, the Plaintiffs filed a Complaint with the United States District Court for the District of Idaho in which they make the same allegations that they make in this case, against the same Defendants. The Plaintiffs represent that they filed in Idaho to avoid a statute-of-limitations procedural default should any of the Defendants challenge personal jurisdiction in Minnesota. Nevertheless, the Plaintiffs have demonstrated that the case could have been brought, and indeed has been brought, in the District of Idaho. Thus Sinclair meets the threshold prerequisite to transfer under § 1404(a).

#### II. Private Interests of the Parties

Next, the Court considers the convenience of the parties. All but two of the Plaintiffs reside in Minnesota. The Defendants are corporations from Wyoming, Idaho and California, and Sinclair does not dispute that the Defendants are more financially suited to defend this matter in Minnesota than are the Plaintiffs to prosecute the matter in Idaho. The Court agrees that trial in Idaho would indeed shift the inconvenience from the Defendants to the Plaintiffs. But while such a shift could not *alone* support transfer, neither does it alone defeat transfer. *See United Mortgage,* 853 F.Supp. at 311 (rejecting motion to transfer where transfer would *merely* shift the inconvenience); *Nelson v. Bekins Van Lines Co.,* 747 F.Supp. 532, 535 (D.Minn.1990) (noting that the proposed transfer would *merely* shift the inconvenience from defendants to plaintiffs). The Court concludes only that transfer to Idaho would be more convenient for the Defen-

dants, while Minnesota is a more convenient forum for the Plaintiffs, but notes that this fact is not dispositive.

Sinclair argues that in Idaho there would be greater ease of access to the sources of proof, and particularly that Idaho is the only venue which would permit even the possibility of view of the premises. It contends that view of the arena would be appropriate and necessary to its defense. The Plaintiffs argue that the Idaho District Court is actually about a 3 hour drive from the arena, thus making viewing the arena impractical even if the case is tried in Idaho. Additionally, they maintain that photographs or diagrams of the arena would suffice and that this evidence could just as easily be presented in Minnesota.

Travel to the site of the hockey game, even if the arena were within the same city as the courthouse, would seem unlikely; as the Court noted at oral argument on this matter, the experience of the undersigned has been that such viewings are rarely requested. Additionally, under the circumstances of this case, Sinclair's asserted reason for viewing the site would not necessarily demand granting a motion to view:

> [A]t least four plaintiffs . . . noticed either ventilation problems or air quality problems as they entered the arena on the date in question. . . . [T]here is a jury question whether, at least as to some plaintiffs, the Zamboni fumes presented a hazard that was open and obvious, and that plaintiffs bear some fault for continuing to exert themselves in an arena that contained, to them, obviously unhealthy air.
>
> For the jury members to evaluate this affirmative defense, each must have the opportunity through his or her own senses to view the spaciousness of the arena, evaluate the lighting, gauge distances, feel air currents, *smell odors* and breathe at the altitude *and in the physical environment where these allegedly serious injuries were suffered.*

Sinclair Reply Brief in Support of Motion to Transfer at 6–7 (emphasis added). Of course, Sinclair recognizes that after the incident giving rise to this action, the arena and

Zamboni machine were modified, and that subsequent remedial measures are generally not admissible. Fed.R.Evid. 407. And equally obvious, as the parties recognize, no court would order the recreation of the allegedly dangerous conditions, even if possible, just to permit the jurors to experience the conditions as they existed in the arena at the time of the Plaintiffs' alleged injury.

However, such a viewing would seem relevant, fully within the discretion of the Idaho District Court to permit, and arguably quite helpful to the jury. And despite that this Court has found such requests to be rare, and that even an Idaho jury would have to travel some distance to the site, the Court recognizes that the District Court of Idaho, as the facts at trial develop, may find the burden not only justified but necessary to aid the understanding of the jury. On its part, Defendant Zamboni would prefer Minnesota, but not strongly, and has provided that it customarily ships its machines throughout the country and so would willingly ship relevant machine parts anywhere the trial occurs. But as to the arena itself, the Court concludes that while video tapes, diagrams or models might be sufficient to aid the jury's understanding, Sinclair has reasonably asserted that it would like the opportunity to have the jury view the site, and venue in Minnesota would make granting such a request impossible.

Sinclair next contends that the fact that potential third-party defendants who reside in Idaho cannot be impleaded in a Minnesota action argues in favor of transfer. The Court agrees with the Plaintiffs that Sinclair's failure even to specify any of these potential third-party defendants renders this argument unpersuasive.

Sinclair also asserts that a substantial majority of the non-party witnesses with material testimony—but who are unwilling to testify—reside in Idaho. Sinclair has provided an affidavit indicating a preliminary list of witnesses from places other than Minnesota. It asserts that witnesses who will offer testimony regarding the design and construction of the arena reside in Idaho. However, Sinclair does not dispute that it has not yet identified the architect, construction company, building inspectors or HVAC contractors. And of course it cannot therefore establish which, if any of these, do not reside in Idaho, or which, if any, is unwilling to testify.

Sinclair also points to the anticipated testimony of various unspecified persons. These include the 25 members of the Suns hockey team, spectators, news reporters, Idaho poison control personnel contacted by emergency room staff immediately after the incident, ambulance personnel and emergency room nurses. While the Court is aware of no Eighth Circuit case requiring a movant to specify the key witnesses to be called and to make a general statement of what their testimony would have included, several other courts of appeals have so held. *See Heller Financial, Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1293–94 (7th Cir.1989) (affirming district court decision not to transfer where, among other factors, the defendant supplied no affidavit or other document indicating specifically who it planned to call or the materiality of the testimony); *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir. 1978) (finding no abuse of discretion where the district court denied motion to transfer on grounds of inconvenience of witnesses because the defendant did not even attempt to specify witnesses or to make a general statement about their testimony), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); *Chicago, Rock Island and Pacific Railroad Co. v. Hugh Breeding, Inc.,* 232 F.2d 584, 587–88 (10th Cir.1956) (finding district court refusal to transfer not an abuse of discretion where the railroad's affidavit merely stated it would be required to bring twenty witnesses from Kansas, and that ten of them were non-railroad employees whom the railroad could not compel to attend trial in Oklahoma); *and cf., Reyno,* 630 F.2d at 160–61 (applying the same principle in *forum non conveniens* context).

The Tenth Circuit in *Hugh Breeding* summarized well the rationale for this rule: "so the court in reaching its conclusion might consider the materiality [of the testimony of these witnesses]." 232 F.2d at 588. Noteworthy also is *Alcoa Steamship Co., v. M/V Nordic Regent,* 654 F.2d 147 (2d Cir.), *cert. denied,* 449 U.S. 890, 101 S.Ct. 248, 66

L.Ed.2d 116 (1980). There, notwithstanding acceptance of the general rule and the heightened standard of *forum non conveniens* dismissal, the Second Circuit affirmed the district court's dismissal based on *forum non conveniens* although the moving party did not disclose the name of even a single allegedly inconvenienced essential witness. 654 F.2d at 160 (Van Graafeiland, J., dissenting). Thus, the rule is not ironclad.

In addition to the categories of unnamed witnesses discussed above, Sinclair has provided an affidavit specifically identifying 22 witnesses who do not reside in Minnesota. The list includes the specific individuals involved in the investigation into the incident and medical doctors and nurses serving in medical facilities that treated those alleging injuries from the nitrogen dioxide fumes. Sinclair does not provide an affidavit as to the general testimony these individuals will offer, but counsel did assert at oral argument the obvious; that is, that the medical witnesses will testify to the Plaintiffs' injuries and the investigatory witnesses will provide testimony regarding the post-incident investigation.

On their part the Plaintiffs indicate that the relevant parties who sought technical, investigatory assistance from specialists in the field of arena safety looked to Minnesota, as virtually all of these specialists called in to Idaho were from Minnesota. The Plaintiffs also point to Dr. Michael Bowen, of Minnesota, who will testify regarding the Plaintiffs' medical progress after they returned from their initial treatment at Idaho medical facilities, and to the Plaintiffs' co-workers, friends and family members, who will provide additional damages-testimony.

The Court concludes that the bulk of the testimony to be provided by fact specialists and expert specialists will be provided by Minnesota witnesses, and that the witnesses testifying on behalf of the Plaintiffs regarding continuing damages will also be from Minnesota. But as discussed during the hearing on this matter, the Court is not influenced by the potential inconvenience of expert witnesses, who generally travel substantially to provide their testimony. It is clear and undisputed that there are indeed specific Idaho witnesses listed by the Defendants whose testimony is inevitable, including at least a representative group from the various medical facilities initially treating the Plaintiffs. The Court also considers at least the likelihood of testimony from Idaho spectators, arena personnel, and yet unnamed medical personnel. Because the Court cannot determine precisely how many of these witnesses would need to testify in person, however, or how the testimony of these witnesses will bear on the case, the Court cannot conclude that their inconvenience, though likely if called on to testify in Minnesota, would substantially outweigh that of the Minnesota third-party witnesses identified by the Plaintiffs.

### III. Public Interest and the Interest of Justice

As to public concerns and the interest of justice, Sinclair argues that the District Court of Idaho is less congested than the District Court of Minnesota. While this fact is not disputed, the Court notes this factor will not substantially affect the Court's decision today, as the minor docket difference is inconsequential, creating no significant threat of delay and concomitant additional expense in either forum.

But the Court notes again the Supreme Court's concern in *Gilbert* that "jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." The Plaintiffs do indeed mostly reside in Minnesota. Yet it is clear that most of those who were exposed to the allegedly harmful fumes, and those who may risk exposure in the future at the Sun Valley arena, are likely to be Idaho residents.

Additionally, Sinclair asserts that arena safety will pose a novel issue to Idaho law. The Plaintiffs argue that Idaho applies the reasonable-person standard, and that a Minnesota jury could just as equitably apply that standard as an Idaho jury. However, Sinclair contends without dispute that, unlike Minnesota, Idaho has not addressed the question of what is reasonable regarding the standard for arena air quality and ventilation. As the Plaintiffs have pointed out, Minnesota seems to have an abundance of

specialists in the field of indoor arena air safety, and Sinclair asserts this is due to Minnesota's unsurpassed regulation in this area. Sinclair contends that a judge and jury sitting in Idaho are in a better position to provide and apply the standard by which to judge the air quality of the Idaho facility. The Court agrees. A federal court sitting in Idaho is better suited to determine what standard of reasonableness the State of Idaho would adopt regarding the novel issue of indoor arena air quality and ventilation. The Defendants have expressed the plausible, serious concern that if the case is tried in Minnesota, the standard of reasonable arena safety applied to them will be higher than the standard an Idaho court and jury would apply, particularly since Minnesota's experience imposing air quality standards is more exhaustive than Idaho's experience. *Cf. Wolverton Farmers Elevator v. First American Bank,* 851 F.2d 223, 225 (8th Cir.1988) (deferring to district court's interpretation of the law of the state in which the district court sits); *Cambee's Furniture, Inc. v. Doughboy Recreational, Inc.,* 825 F.2d 167, 171 (8th Cir.1987) (giving substantial deference to the trial judge's interpretation where the state's highest court had not decided the question).

Moreover, an Idaho court should lay down the novel standard by which Idaho residents may be judged in the future. As is corroborated by documents submitted by the Plaintiffs, there are only two indoor ice rinks in the state of Idaho, and they presently are entirely unregulated by the State if Idaho. "There is a local interest in having localized controversies decided at home." *Gilbert,* 330 U.S. at 509, 67 S.Ct. at 843. "There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems ... in law foreign to itself." *Id.*

## CONCLUSION

There is no question that this case could have been brought in the District of Idaho; the Plaintiffs in fact have filed a Complaint in the United States District Court of Idaho in which they make the same allegations against the same Defendants. Idaho would be a more convenient forum for the Defendants, while Minnesota would be more convenient for the Plaintiffs. While video tapes, diagrams or models *might* sufficiently aid the jury's understanding, evidence developed at trial could well make a viewing of the site highly beneficial, and venue in Minnesota would make granting a request to view the arena impossible. Sinclair has not provided affidavits to permit the Court to determine precisely how many Idaho medical care providers would need to testify in person, or how their testimony will bear on the case. Thus the Court cannot conclude that their inconvenience, though they would certainly be inconvenienced if called on to testify in Minnesota, would substantially outweigh that of the third-party witnesses identified by the Plaintiffs if called on to testify in Idaho.

To this point in the analysis the overall inconvenience of trying the case in Minnesota seems greater than if tried in Idaho, but not yet sufficiently strong to justify transfer. However, the novelty of the controlling legal issue—i.e., what is the reasonable standard of air quality and ventilation in indoor arenas in Idaho—argues strongly to tip the scales in favor of transfer. A court sitting in Idaho, not Minnesota, should lay down the novel standard by which the Defendants will be judged in this case, and by which Idaho residents may be judged in the future. Taken together, the unique facts of this case justify transfer to the District Court of Idaho.

Accordingly, **IT IS HEREBY ORDERED** THAT Sinclair's Motion to Transfer is GRANTED; this action is TRANSFERRED to the United States District Court of Idaho.